# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER L. CRAMBLETT, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 4553 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| MIDWEST SPERM BANK, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In September 2014, Plaintiff Jennifer Cramblett filed suit against Midwest Sperm Bank, LLC ("Midwest") in Illinois state court, alleging claims under Illinois law. In April 2016, Cramblett filed this federal diversity action against Midwest, also alleging a variety of state law claims. Because Cramblett's state court action remains pending, Midwest Sperm Bank has moved to stay the proceedings in this case pursuant to the *Colorado River* abstention doctrine. For the reasons set forth herein, Midwest's motion to stay is granted.

## Background

Jennifer Cramblett is a resident of Canton, Ohio. Compl. ¶ 2, ECF No. 1. In August 2011, she entered into a contract with Midwest—an Illinois limited liability company—to purchase sperm from "Donor No. 380" for artificial insemination. *Id.* ¶¶ 3, 9–10, 37. In connection with this contract, Midwest provided Cramblett with a written warranty guaranteeing its compliance with certain FDA regulations governing human cells and tissues. *Id.* ¶ 12.

In December 2011, Cramblett was artificially inseminated with sperm delivered by Midwest. *Id.* ¶ 9. Approximately five months into her pregnancy, however, she learned that she had been artificially inseminated with sperm from Donor No. 330, and not from Donor No. 380 as she had requested. *Id.* ¶¶ 10–11. Donor No. 380 is Caucasian, whereas Donor No. 330 is African American. *Id.* ¶ 10.

In August 2012, Cramblett gave birth to a daughter of mixed race. *Id.* ¶ 15. According to Cramblett, her daughter's birth has given rise to "numerous challenges and external pressures associated with an unplanned transracial parent-child relationship for which [Cramblett] was not, and is not, prepared." *Id.* ¶ 16. Cramblett further alleges that she and her daughter "require long-term individual and family counseling as well as a change of domicile to a place that is more racially and culturally diverse." *Id.* ¶ 17.

On September 29, 2014, Cramblett filed suit against Midwest in the Circuit Court of Cook County, Illinois, alleging wrongful birth and breach of warranty in violation of Illinois law. *Id.* ¶ 8; *see also* Mot. Stay, Ex. C, Case No. 14 L 010159, Complaint, ECF No. 22. The suit was subsequently transferred to the Circuit Court of DuPage County, Illinois, where Cramblett then filed an amended complaint on September 3, 2015. Compl. ¶ 8; *see also* Mot. Stay, Ex. F, Case No. 2015 L 282, Amended Complaint ("State Am. Compl."). The amended complaint alleges claims for (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*, (2) violation of the Illinois Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*, (3) fraud, (4) violation of the

2

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, (5) negligent misrepresentation, (6) breach of warranty, (7) breach of contract, (8) gross negligence, and (9) ordinary negligence. State Am. Compl. ¶¶ 16–76.

On March 11, 2016, the state court dismissed Cramblett's claims under the Illinois Deceptive Trade Practices Act and the Magnuson-Moss Warranty Act with prejudice. Mot. Stay at 3. The court also dismissed the remaining seven counts without prejudice for failure to state a claim, giving Cramblett leave to file a second amended complaint within forty-five days. *Id.* at 3–4. Because Cramblett never filed a second amended complaint, however, the state court dismissed her seven remaining claims with prejudice on July 21, 2016.[1] *Id.* at 5. Following this dismissal with prejudice, Cramblett filed a notice of appeal to the Illinois Appellate Court, seeking reinstatement of those seven claims. *Id.*, Ex. B. The appeal remains pending.

Meanwhile, in April 2016, Cramblett filed the present federal diversity action against Midwest. The complaint in her federal action alleges state law claims for (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, (2) fraud, (3) breach of warranty, (4) breach of contract, (5) willful and wanton misconduct, and (6) negligence. Compl. ¶¶ 19–57. In light of Cramblett's pending

---

[1] In her brief in opposition to Midwest's motion to stay, Cramblett takes the rather curious position that she actually complied with the state court's order by refiling her claims in federal court. Resp. at 5 & n.10, ECF No. 25. But this could not have been what the state court meant, as evidenced by its subsequent order dismissing the suit with prejudice. And, for the purpose of deciding this motion, the Court cannot ignore the final judgment entered by the state court and resulting appeal that is pending. What preclusive effect, if any, the state court's judgment, if affirmed, will have on the claims asserted here will undoubtedly be a matter for another day.

3

appeal before the Illinois Appellate Court, Midwest has moved to stay the federal proceeding under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

## Analysis

Under *Colorado River*, a federal district court may stay a suit under certain "exceptional circumstances" where there is a concurrent state proceeding and a stay of the federal proceeding would promote "wise judicial administration." *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004) (quoting *Colo. River*, 424 U.S. at 818). The purpose of the *Colorado River* doctrine is to "conserve both state and federal judicial resources and prevent inconsistent results." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014). In deciding whether to stay proceedings under *Colorado River*, district courts must be mindful of their "virtually unflagging obligation . . . to exercise the jurisdiction given to them," *Clark*, 376 F.3d at 685 (quoting *Colo. River*, 424 U.S. at 817–18), abstaining from the exercise of jurisdiction only when abstention is justified by "exceptional circumstances [and] the clearest of justifications . . . under *Colorado River*." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983)) (internal quotation marks omitted).

To determine whether a *Colorado River* stay is warranted, a federal court must apply a two-part test. First, the court must determine "whether the concurrent state and federal actions are actually parallel." *Id.* (quoting *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989)). Second, if the two

4

actions are indeed parallel, the court must consider ten nonexclusive factors that speak to the presence of exceptional circumstances warranting a stay. *Freed*, 756 F.3d at 1018; *Clark*, 376 F.3d at 685. These ten factors include:

(1) whether the state has assumed jurisdiction over property;

(2) the inconvenience of the federal forum;

(3) the desirability of avoiding piecemeal litigation;

(4) the order in which jurisdiction was obtained by the concurrent forums;

(5) the source of governing law, state or federal;

(6) the adequacy of state-court action to protect the federal plaintiff's rights;

(7) the relative progress of state and federal proceedings;

(8) the presence or absence of concurrent jurisdiction;

(9) the availability of removal; and

(10) the vexatious or contrived nature of the federal claim.

*Freed*, 756 F.3d at 1018 (citing *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 754 (7th Cir. 2006)).

## I. Parallelism of State and Federal Actions

Concurrent state and federal actions are parallel for purposes of the *Colorado River* doctrine when there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Freed*, 756 F.3d at 1018 (quoting *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir. 1985)). In determining whether concurrent actions are parallel, federal courts consider whether the actions concern substantially the same parties, legal

5

allegations, and underlying facts. *See id.* at 1018–19; *Clark*, 376 F.3d at 686. Courts also consider whether the concurrent actions would be resolved through examination of the same set of evidence. *See Huon v. Johnson & Bell Ltd.*, 657 F.3d 641, 647 (7th Cir. 2011). "If there is any doubt that cases are parallel, a district court should not abstain." *Id.* at 646 (citing *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 520 (7th Cir. 2001)).

Here, there is no doubt—and the parties do not dispute—that Cramblett's state and federal actions are parallel for purposes of the *Colorado River* doctrine. The six claims brought against Midwest in the federal action are virtually identical to six of the claims brought against Midwest in the state action. Specifically, Counts I, II, III, IV, and VI of Cramblett's federal complaint allege nearly verbatim the counts in her amended state court complaint for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, fraud, breach of warranty, breach of contract, and negligence. *Compare* Compl. ¶¶ 19–42, 51–57, *with* State Am. Compl. ¶¶ 16–22, 30–35, 49–61, 70–76. Further, Count V of Cramblett's federal complaint is substantially the same as the count for gross negligence in her amended state court complaint: both counts allege that Midwest acted willfully, intentionally, maliciously, and intentionally in "breach[ing] its legal duties to [Cramblett], . . . thereby causing [Cramblett] to be artificially inseminated with sperm from the wrong donor." Compl. ¶¶ 46–48; State Am. Compl. ¶¶ 65–67. It is true that Count V of the federal complaint is labeled as a claim for "willful and wanton misconduct," rather than as a claim for "gross negligence." But this

6

superficial difference is of no matter, as "the parallel nature of the actions cannot be . . . dispelled by repackaging the same issue under different causes of action." *Clark*, 376 F.3d at 686–87.

In addition to containing the same legal allegations, Cramblett's state and federal actions arise from the same underlying set of facts. Specifically, both suits are premised on Cramblett's contract with Midwest for the provision of sperm, and in both suits Cramblett's claims are based upon Midwest's alleged failures to deliver the correct sperm and to comply with relevant FDA regulations. *Compare* Compl. ¶¶ 9–18, *with* State Am. Compl. ¶¶ 6–15.

In sum, the legal claims and factual allegations in Cramblett's state and federal actions overlap in their entirety, and the issues raised in the two cases will be resolved by referencing substantially the same facts and evidence. As such, there is a substantial likelihood that the state proceeding will dispose of all claims brought in the federal action. *Cf. Freed*, 756 F.3d at 1020–21; *Clark*, 376 F.3d at 687. The two actions are therefore parallel for purposes of the *Colorado River* doctrine.

## II. Ten Nonexclusive Factors Warranting *Colorado River* Abstention

Because Cramblett's state and federal actions are parallel, the Court now turns to consider the ten nonexclusive factors that might demonstrate the presence of exceptional circumstances warranting a stay in the federal proceedings. *See Freed*, 756 F.3d at 1018; *Clark*, 376 F.3d at 685. In making this consideration, "no one factor is necessarily determinative." *Freed*, 756 F.3d at 1018 (quoting *Colo.*

7

*River*, 424 U.S. at 818). In addition, because abstention is the exception rather than the rule, absent or neutral factors weigh against a stay. *See Huon*, 657 F.3d at 648.

### A. Whether the State Has Assumed Jurisdiction over Property

Cramblett asserts that the first *Colorado River* factor weighs against abstention because the Illinois state courts have not assumed jurisdiction over any property in connection with her case. Resp. at 5. Midwest concedes this point. Reply at 2, ECF No. 25. The Court therefore finds that this factor weighs against abstention.

### B. Inconvenience of the Federal Forum

Cramblett also asserts that the second factor weighs against abstention because litigating before this Court would not be inconvenient for Midwest. Resp. at 5. As with the first factor, Midwest concedes this point. Reply at 2. The Court thus finds that this factor likewise weighs against abstention.

### C. Desirability of Avoiding Piecemeal Litigation

Next, Cramblett argues that the desirability of avoiding piecemeal litigation weighs against abstention, on the grounds that Cramblett's state court action has not advanced beyond the pleading stage and that the risk of piecemeal litigation is therefore highly unlikely. Resp. at 6. Midwest disputes this point, arguing that Cramblett's decision to file a federal complaint creates a high risk of both piecemeal litigation and a waste of judicial resources. Mot. Stay at 8–9.

Given the substantial similarities between the state and federal actions, the Court agrees with Midwest that this factor weighs strongly in favor of abstention. If the Illinois Appellate Court reinstates Cramblett's claims per her request, *see*

8

Mot. Stay, Ex. B, those claims—just like the virtually identical claims before this Court—will then proceed through pretrial motions and discovery, heading toward a trial on the merits. Allowing the cases to proceed simultaneously might therefore result not only in duplicative proceedings before the state and federal courts, but also in the risk of inconsistent rulings. The Seventh Circuit has made clear that "this sort of redundancy counsels in favor of a stay." *Clark*, 376 F.3d at 687 (citing *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th Cir. 1992)); *see also Freed*, 756 F.3d at 1022.

It is true that such duplication might be avoided if the Illinois Appellate Court were to affirm the state trial court's dismissal of Cramblett's claims, thereby resolving the proceeding and precluding the onset of discovery. But if the Illinois Appellate Court were to issue such a ruling, then Cramblett's federal case might be dismissed on grounds of claim preclusion. *See Lumen*, 780 F.2d at 695 (explaining that "[p]rinciples of res judicata can be expected to operate in full force, particularly in light of [ ] duplicate proceedings"). In light of this possibility, the Seventh Circuit has instructed that it is sensible to stay the federal proceeding until the state action has reached a conclusion. *See Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) (citing *Colo. River*, 424 U.S. at 817–21; *LaDuke*, 879 F.2d at 1556). For these reasons, this factor weighs strongly in favor of abstention.

### D. Order in Which Jurisdiction Was Obtained

The Illinois courts obtained jurisdiction over Cramblett's state action in September 2014. *See* Mot. Stay, Ex. C. Cramblett filed her federal action approximately nineteen months later, in April 2016. *See generally* Compl. As such,

9

the order in which jurisdiction was obtained in the concurrent state and federal forums weighs heavily in favor of abstention. *See Interstate Material Corp. v. City of Chi.*, 847 F.2d 1285, 1289 (7th Cir. 1988) (noting that this factor weighed in favor of abstention where state action was filed seven months before federal action); *Lumen*, 780 F.2d at 697 (noting that this factor weighed in favor of abstention where state action was filed almost five months before federal action).

Cramblett concedes that the state action was filed first, but she argues that this factor should be given minimal consideration because no substantial progress has been made in the state proceeding. Resp. at 6. In advancing this argument, Cramblett appears to conflate this factor with the seventh *Colorado River* factor—that is, the relative progress of the state and federal proceedings. Even assuming *arguendo* that courts may properly merge the analysis of these two factors, the Court finds that Cramblett's argument lacks merit. In considering the progress of a state proceeding, courts focus "not on the amount of discovery completed but on how far the state court has progressed toward a final resolution." *Huon*, 657 F.3d at 648 (citing *Moses H. Cone*, 460 U.S. at 21). Although Cramblett's state action has not advanced into the discovery phase, the Circuit Court of DuPage County has issued a final judgment in the case, and the judgment is now pending on review before the Illinois Appellate Court. *See* Mot. Stay, Ex. B. As such, the Court rejects Cramblett's argument that no substantial progress has been made in the state proceeding. In conclusion, this factor weighs significantly in favor of abstention.

### E. Source of Governing Law

As Cramblett acknowledges, all six of the claims in her federal complaint are brought under Illinois statutory and common law. Cramblett asserts, however, that the source of governing law should be given only negligible weight in the *Colorado River* analysis. This argument is contrary to well-established Seventh Circuit precedent, which does not assign lesser weight to this factor. *See Clark*, 376 F.3d at 687–88 (holding that the source of governing law weighed in favor of a stay where both the state and federal actions were governed by New York law); *Freed*, 756 F.3d at 1022 ("[A]ll claims at issue in this appeal are governed by state law. . . . Thus, the fifth factor also weighs in favor of abstention."); *Day v. Union Mines Inc.*, 862 F.2d 652, 660 (7th Cir. 1988) ("[W]e have found that a state court's expertise in applying its own law favors a *Colorado River* stay."). As such, the Court finds that the source of law governing the claims in Cramblett's state and federal actions weighs in favor of abstention.

### F. Adequacy of State Action to Protect Federal Plaintiff's Rights

Next, Cramblett argues that *Colorado River* abstention is unwarranted in this case because her state action is inadequate to protect her legal rights. In support, Cramblett points to the state trial court's dismissal of her claims, contending that this dismissal is indicative of the court's bias against her as an out-of-state litigant. Resp. at 8–9.

Cramblett's argument is unavailing for several reasons. First and most importantly, the argument is wholly undercut by the fact that Cramblett herself chose to file suit in Illinois state court. When a plaintiff voluntarily chooses to

litigate her claims in a state forum, she "effectively undermine[s] [her] own argument" that she will be unfairly prejudiced in the state proceeding due to her status as an out-of-state litigant. *Freed*, 756 F.3d at 1022–23. Moreover, while the state court's dismissal of Cramblett's claims was indisputably an unfavorable outcome from Cramblett's point of view, there is no indication that the state court acted in a biased or unfair manner in applying Illinois's substantive laws and procedural rules to adjudicate Cramblett's claims. This Court therefore cannot conclude that the state court is an inadequate forum on this basis. *See Tyrer*, 456 F.3d at 757 (rejecting plaintiff's argument that state court was an inadequate forum when plaintiff did "nothing to substantiate this argument [ ] except to complain that the state court rejected his claims"). Finally, the Court emphasizes that Midwest has moved to stay Cramblett's federal lawsuit rather than to dismiss it outright. Unlike a dismissal, a stay protects a federal plaintiff's rights by "allow[ing] [her] the possibility to revive [her] federal litigation depending on the outcome in state court." *Freed*, 756 F.3d at 1023.

For these reasons, the Court finds that Cramblett's rights are adequately protected in the state proceeding. The state and federal actions present the same questions of law and fact, and "the state court can resolve these questions just as effectively" as the federal court. *Clark*, 376 F.3d at 688. This factor thus weighs in favor of abstention.

### G. Relative Progress of State and Federal Proceedings

The relative progress of the state and federal actions also weighs in favor of abstention. On the one hand, Cramblett's federal action is still at the pleading

12

stage. On the other hand, her state action has reached a final judgment and is now pending on appeal. The fact that the state action did not advance to discovery before the court issued a final judgment does not undermine the conclusion that more progress has been made in the state action than in the federal action, at least for purposes of the *Colorado River* analysis. *See Huon*, 657 F.3d at 648 (rejecting plaintiff's argument that his state action had not substantially progressed when the action had been dismissed at the pleading stage). As such, this factor weighs in favor of abstention—and heavily so, given that the state proceeding is already on appeal. *See id.*

### H. Presence or Absence of Concurrent Jurisdiction

Cramblett concedes that the state and federal courts have concurrent jurisdiction over the claims in her parallel proceedings. Resp. at 10. She argues, however, that the presence of concurrent jurisdiction is a factor that should not be given much weight in the *Colorado River* analysis, because concurrent jurisdiction "exists in every diversity case" and thus does not demonstrate the presence of "exceptional circumstances" warranting abstention. *Id.*

Cramblett's point is well-taken. Indeed, it is difficult to imagine a federal diversity case in which a court could find that this factor weighed *against* abstention, given that the threshold step of the *Colorado River* analysis requires a court to find the presence of parallel proceedings in state and federal forums. *See Clark*, 376 F.3d at 685. Given the commonplace nature of such concurrent jurisdiction, the Court agrees that this factor is minimally probative of whether exceptional circumstances exist to justify abstention. *See Colo. River*, 424 U.S. at

13

818. Thus, although the "availability of concurrent jurisdiction weigh[s] in favor of a stay," *Clark*, 376 F.3d at 688, the Court will give this factor relatively less weight than the other factors weighing in favor of abstention.

## I. Availability of Removal

Next, the Court finds that the availability—or rather, the unavailability—of removal from state court also weighs in favor of abstention. Because Midwest is a resident of Illinois, it did not have the option of removing Cramblett's state action to federal court. *See* 28 U.S.C. § 1441(b)(2) (prohibiting removal on the basis of diversity jurisdiction by a defendant who is a citizen of the state in which the original state action was brought). Cramblett contends that this factor should be treated as neutral rather than as weighing in favor of a stay, *see* Resp. at 10, but the Court rejects this argument as contrary to Seventh Circuit precedent. *See Clark*, 376 F.3d at 688 (citing *Day*, 862 F.2d at 659–60) (holding that "the inability to remove the [state] action to federal court" weighs in favor of a stay). Accordingly, this factor weighs in favor of abstention.

## J. Vexatious or Contrived Nature of Federal Action

Finally, Midwest argues that the tenth *Colorado River* factor weighs in favor of abstention on the ground that Cramblett's decision to file her federal action was "merely an attempt to avoid the effect of an unfavorable state court decision." Mot. Stay at 12. Based on the record before it, the Court declines to conclude that the filing of Cramblett's federal action was vexatious or contrived. Although it is possible that Cramblett filed her federal suit for the purpose of harassment, it is at least equally possible that she filed the suit in good-faith pursuit of her legal rights.

The Court therefore finds that this factor weighs against abstention. *Cf. Sterling Fed. Bank, F.S.B. v. Countrywide Fin. Corp.*, No. 11-CV-2012, 2012 WL 2368821, at *16 (N.D. Ill. June 21, 2012) (finding that this factor weighed against abstention where defendant did not provide the court with "sufficient information from which to conclude" that plaintiff's claims were vexatious or contrived).

### K. Balancing the Factors

In sum, the majority of the *Colorado River* factors weigh in favor of a stay in Cramblett's federal action. As explained above, several of these factors—namely, the desirability of avoiding piecemeal litigation, the order in which the concurrent forums obtained jurisdiction, and the relative progress of the state and federal proceedings— weigh particularly heavily in favor of a stay, as they especially indicate that abstention would promote wise, efficient judicial administration. Three of the ten factors weigh against a stay, but Cramblett has not persuaded the Court that these three factors come close to outweighing the other seven. As such, the Court concludes that the balance of the factors demonstrates the presence of exceptional circumstances warranting a stay in the federal proceeding.

## Conclusion

For the reasons stated herein, Midwest's motion to stay the federal proceeding pursuant to *Colorado River* [22] is granted. This case is placed on the Court's suspended trial calendar. The parties are instructed to inform the Court within twenty-eight days after the conclusion of the parallel state proceeding.

**IT IS SO ORDERED.**   ENTERED   1/27/17

_____
**John Z. Lee**
**United States District Judge**